**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

ANNA BOYD, individually and on behalf of
all others similarly situated,

        Plaintiff,

        v.

SPOKEO, INC.

        Defendant.

Case No. 3:21-cv-03020

District Judge Sue E. Myerscough

U.S. Magistrate Judge Tom Schanzle-Haskins

**<u>MEMORANDUM IN SUPPORT OF
DEFENDANT SPOKEO, INC'S MOTION TO DISMISS</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL BACKGROUND ...................................................................2

III.   THE COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFF
      LACKS ARTICLE III STANDING. ........................................................3

IV.   THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE
      PLAINTIFF DOES NOT PROPERLY ALLEGE PERSONAL
      JURISDICTION OVER SPOKEO. .........................................................6

V.    THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE
      TO STATE A CLAIM. ............................................................................8

      A.    Plaintiffs' Allegations Do Not Establish an IRPA Violation...................8

            1.    Plaintiff Does Not Allege that Spokeo Ever Presented a
                "Free Preview" of Her Background Report to a Consumer......................8

            2.    Spokeo's Free Previews Do Not Identify Their Subjects
                Under IRPA. ...........................................................................8

            3.    Spokeo Does Not Use Its Free Previews for a Commercial
                Purpose Under IRPA...............................................................10

      B.    Spokeo Is Immune From Liability Under the Communications
            Decency Act. ..........................................................................12

      C.    The First Amendment Bars Plaintiff's Claim. .......................................14

            1.    Spokeo's "Reports," Listings, and "Previews" Are
                Protected Speech. ...................................................................15

            2.    Plaintiff's Proposed Application Of IRPA Fails Strict
                Scrutiny. ................................................................................17

      D.    Plaintiff's Proposed Application of IRPA Would Violate Illinois'
            Extraterritoriality Doctrine and the Federal Dormant Commerce
            Clause....................................................................................18

            1.    Plaintiff Has Not Alleged A Sufficient Nexus To Illinois.........................18

            2.    The Dormant Commerce Clause Also Bars Plaintiff's IRPA
                Claim.....................................................................................20

i

CONCLUSION........................................................................................................21

CERTIFICATE OF COMPLIANCE........................................................................23

CERTIFICATE OF SERVICE ................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. VIM Recycling, Inc.*,
　644 F.3d 483 (7th Cir. 2011) ....................................................9

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
　751 F.3d 796 (7th Cir. 2014) .............................................4, 6, 7

*Almeida v. Amazon.com, Inc.*,
　456 F.3d 1316 (11th Cir. 2006) ..........................................10, 16

*Am. Booksellers Found. v. Dean*,
　342 F.3d 96 (2d Cir. 2003)...................................................21

*Am. Civil Liberties Union v. Johnson*,
　194 F.3d 1149 (10th Cir. 1999) .............................................21

*Am. Libraries Ass'n v. Pataki*,
　969 F. Supp. 160 (S.D.N.Y. 1997) ..........................................21

*Avery v. State Farm Mut. Auto. Ins. Co.*,
　216 Ill. 2d 100 (2005) ...................................................18, 19

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
　88 F. Supp. 3d 543 (E.D. Va. 2015) .........................................13

*Bittman v. Fox*,
　2016 WL 2851566 (N.D. Ill. May 16, 2016) ..................................7

*Bolger v. Youngs Drug Prods. Corp.*,
　463 U.S. 60 (1983)......................................................15, 16

*Callahan v. Ancestry.com Inc.*,
　2021 WL 783524 (N.D. Cal. Mar. 1, 2021).............................5, 13, 14

*Carafano v. Metrosplash.com., Inc.*,
　339 F.3d 1119 (9th Cir. 2003) ..............................................14

*Charles v. City of Los Angeles*,
　697 F.3d 1146 (9th Cir. 2012) ..............................................16

*Cher v. Forum Int'l, Ltd.*,
　692 F.2d 634 (9th Cir. 1982) ...............................................16

*Crabtree v. Experian Info. Sols., Inc.*,
 948 F.3d 872 (7th Cir. 2020) ................................................6

*Daly v. Viacom, Inc.*,
 238 F. Supp. 2d 1118 (N.D. Cal. 2002) ................................16

*Dex Media W., Inc. v. City of Seattle*,
 696 F.3d 952 (9th Cir. 2012) ..............................................15

*Dobrowolski v. Intelius, Inc.*,
 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) .........................7

*Dobrowolski v. Intelius, Inc.*,
 2018 WL 11185289 (N.D. Ill. May 21, 2018) ...............9, 10, 12

*Esch v. Univ. Pictures Co.*,
 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) .........................16

*Fero v. Excellus Health Plan, Inc.*,
 236 F. Supp. 3d 735 (W.D.N.Y. 2017) ...................................5

*Graham v. General U.S. Grant Post No. 2665, V.F.W.*,
 43 Ill. 2d 1 (1969) .............................................................19

*Groden v. Random House, Inc.*,
 61 F.3d 1045 (2d Cir. 1995) ...............................................16

*Guglielmi v. Spelling-Goldberg Prods.*,
 25 Cal. 3d 860 (1979) ........................................................17

*Gullen v. Facebook.com, Inc.*,
 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ............................7

*Hart v. Amazon.com, Inc.*,
 191 F. Supp. 3d 809 (N.D. Ill. 2016) ..................................12

*Hart v. Amazon.com, Inc.*,
 2015 WL 8489973 (N.D. Ill. Dec. 8, 2015) ..........................12

*Haynes v. Alfred A. Knopf, Inc.*,
 8 F.3d 1222 (7th Cir. 1993) ...............................................17

*Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*,
 424 F. Supp. 267 (E.D. Va. 1976) ......................................15

*Healy v. Beer Inst. Inc.*,
 491 U.S. 324 (1989)..........................................................20

iv

*Hooker v. Columbia Pictures Indus. Inc.*,
   551 F. Supp. 1060 (N.D. Ill. 1982) ........................................................10

*Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*,
   2012 Il. App. (2d) 110958 (App. Ct. 2012) ...........................................19

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014) ................................................................16

*Joseph Burstyn, Inc. v. Wilson*,
   343 U.S. 495 (1952) ..............................................................................15

*Jucha v. City of N. Chi.*,
   63 F. Supp. 3d 820 (N.D. Ill. 2014) .....................................................16

*Landau v. CNA Fin. Corp.*,
   381 Ill. App. 3d 61 (2008) ....................................................................19

*Lane v. Random House, Inc.*,
   985 F. Supp. 141 (D.D.C. 1995) ...........................................................16

*Life After Hate, Inc. v. Free Radicals Project, Inc.*,
   2020 WL 1903956 (N.D. Ill. Apr. 16, 2020) ...................................11, 12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................4

*Lukis v. Whitepages Inc.*,
   2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) .........................................11

*Meyers v. Nicolet Rest. of De Pere, LLC*,
   843 F.3d 724 (7th Cir. 2016) ..................................................................4

*Midwest Title Loans, Inc. v. Mills*,
   593 F.3d 660 (7th Cir. 2010) ................................................................21

*Morrison v. YTB Int'l, Inc.*,
   649 F.3d 533 (7th Cir. 2011) ................................................................21

*Murdock v. Pennsylvania*,
   319 U.S. 105 (1943) ..............................................................................16

*N. Grain Mktg., LLC v. Greving*,
   743 F.3d 487 (7th Cir. 2014) ..................................................................6

*Nat'l Life Ins. Co. v. Phillips Publ'g, Inc.*,
   793 F. Supp. 627 (D. Md. 1992) ...........................................................15

*Nettles v. Midland Funding LLC*,
   983 F.3d 896 (7th 2020)................................................................................4, 6

*Nieman v. VersusLaw, Inc.*,
   512 F. App'x 635 (2013) ..............................................................................15, 16

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006) ..................................................................13

*Philos Techs., Inc. v. Philos & D, Inc.*,
   802 F.3d 905 (7th Cir. 2015) ...............................................................................6

*Prickett v. InfoUSA, Inc.*,
   561 F. Supp. 2d 646 (E.D. Tex. 2006) ................................................................13

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ..............................................................................21

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015)...........................................................................................17

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ...............................................................................4

*Riley v. Nat'l Fed. of the Blind of N.C., Inc.*,
   487 U.S. 781 (1988)...........................................................................................16

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ..............................................................................17

*In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F. Supp. 3d 14 (D.D.C. 2014) .........................................................................5

*Silha v. ACT, Inc.*,
   807 F.3d 169 (7th Cir. 2015) ............................................................................4, 5

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)...............................................................................15, 17, 18

*Spokeo Inc. v. Robins*,
   136 S. Ct. 1540 (2016).........................................................................................3

*The Florida Star v. B.J.F.*,
   491 U.S. 524 (1989)...........................................................................................17

*Thompson v. Getty Images, Inc.*,
   2013 WL 3321612 (N.D. Ill. Jul. 1, 2013)..........................................................10

*United States v. Stevens*,
    559 U.S. 460 (2010) ...................................................................................15

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001) .............................................................................11, 15

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...............................................11, 15

*Walden v. Fiore*,
    571 U.S. 277 (2014) .....................................................................................6

*Watkins v. United States*,
    854 F.3d 947 (7th Cir. 2017) ......................................................................9

*Welborn v. Internal Revenue Serv.*,
    218 F. Supp. 3d 64 (D.D.C. 2016) .............................................................4

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977) ...................................................................................17

**Statutes**

765 ILCS 1075/1 *et seq.* ..................................................................... *passim*

47 U.S.C. § 230 ................................................................................2, 12, 13

**Other Authorities**

Federal Rule of Civil Procedure 12 ..........................................................3, 9

1 RIGHTS OF PUBLICITY AND PRIVACY § 6:3 (2d. ed. 2020) ........................20

## I.  <u>INTRODUCTION</u>

For Defendant Spokeo, Inc., this case is déjà vu all over again—for a number of reasons. This is the second case that Spokeo has faced under the Illinois Right to Publicity Act (IRPA) for the ***exact same website screens at issue here***. Judge Shah of the Northern District of Illinois dismissed the prior case years ago. And Plaintiff Anna Boyd's threadbare, speculative allegations about harm are not the type of concrete, real-world injuries that the U.S. Supreme Court said in *Robins v. Spokeo* were necessary for Article III standing. As detailed below, Plaintiff's claims fail for these and several other reasons.

Spokeo is an online search engine that aggregates from publicly-available sources information about individuals—such as addresses, phone numbers, and court records—and allows people to search for and purchase "profile reports" that contain that information. The crux of Plaintiff's complaint is that Spokeo supposedly uses Plaintiff's identity—shown in a "free preview" of the website's available background reports on individuals with the name "Anna Campbell"—to sell its monthly subscription services to customers in violation of IRPA. Compl. ¶¶ 5-9. Plaintiff is wrong, and the Court should dismiss this case for several reasons.

*First*, Plaintiff's allegations of injury based on *Spokeo's* purported economic *gain* from using her identifying information are insufficient to establish Article III standing. Likewise, Plaintiff never even alleges that anyone actually searched for her name on Spokeo's website or viewed the free preview screens she complains about. Thus, her alleged injuries are merely "conjectural or hypothetical."

*Second*, Plaintiff fails to sufficiently plead personal jurisdiction over Spokeo. As the Seventh Circuit and multiple Illinois federal courts have held, there is no personal jurisdiction over a defendant website where, as here, the defendant's alleged online activities are not specifically targeted at the forum state and only incidentally affect users who happen to reside in the forum.

1

*Third*, Plaintiff's IRPA claim fails as a matter of law, as it did before. In *Vinci v. Spokeo, Inc.*, Judge Shah held that the same free preview screens at issue here did not identify plaintiffs, were not used for a commercial purpose, and did not give rise to an IRPA claim. Plaintiff's IRPA claim fails for the same reasons, and her efforts to plead around *Vinci* are futile.

*Fourth*, as another federal court held just last week, directory websites such as Spokeo's are immune from liability under the federal Communications Decency Act, 47 U.S.C. § 230(c)(1). Such sites do not "create" the content shown on their sites, and instead perform a traditional—and protected—editorial function in aggregating and organizing that information for display. Spokeo is thus immune from IRPA liability.

*Fifth*, Plaintiff's proposed application of IRPA also would violate the First Amendment. Spokeo's free previews are afforded the same First Amendment protection as the profiles they promote. Those profiles are noncommercial speech and disseminate publicly available factual information. Accordingly, content-based restrictions on them are unconstitutional unless they survive strict scrutiny. Plaintiff's IRPA claim cannot bear that weight—and the Court must interpret the statute to avoid constitutional issues in any event.

*Finally*, even if IRPA applies to Spokeo's free previews, Plaintiff's claim fails because IRPA does not apply extraterritorially, and she has failed to allege a violation of the act within Illinois. Indeed, the Constitution's Dormant Commerce Clause would preclude the application of IRPA to such out-of-state speech and actions.

For all of the above reasons—any one of which is dispositive—the Court should dismiss Plaintiff's Complaint with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that Spokeo compiles and generates the content it sells on its website and "uses proprietary deep web technology to search over billions of name records." Compl. ¶ 12. On

2

the Spokeo website (www.spokeo.com), "the public-at-large is free to enter the first and last name of a particular individual via a search bar on the homepage." *Id.* ¶¶ 2-3. "After entering this information, any public user of Spokeo's website is provided with a listing of search results," where "[e]ach search result corresponds to an actual person that Spokeo has located who matches the name provided by the public user." *Id.* ¶ 4. Each search result "provide[s] a limited, free preview of [Spokeo's] 'Reports.'" *Id.* ¶ 5. Each preview "includes the searched individual's name (including middle initials), age, current city and state of residence, the searched individual's relatives, and other identifying information." *Id.* (including exemplar screenshots of the Spokeo screens showing a "free preview" of an individual named "Anna M. Campbell").

Plaintiff further alleges that these free previews "entice users to purchase [Spokeo's] services," including "'Address Histories' and 'Court Records' relating to individuals on its database," as well as "monthly subscription services whereby a user can access and retrieve 'Profiles' on any individual in its database." *Id.* ¶¶ 7-8; *see also id.* ¶ 11 ("Spokeo's monthly subscription allows users to obtain background reports using its services on an unlimited number of individuals per month."). Plaintiff alleges that the free preview is itself an advertisement— "Spokeo uses these free previews to advertise its monthly subscription services." *Id.* ¶ 8. Plaintiff claims that Spokeo's alleged use of her identity (and the identities of the putative class members she seeks to represent) in free previews to "advertise its for-profit services" violates IRPA, and seeks relief on that basis. *Id.* ¶¶ 13, 30, 40.

III.   **THE COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.**

Where a plaintiff lacks standing under Article III of the Constitution, an action must be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). As the Supreme Court explained in *Spokeo Inc. v. Robins*, "the 'irreducible constitutional

minimum' of standing consists of three elements:" a plaintiff must (1) experience an injury-in-fact (2) "fairly traceable" to the defendant's conduct (3) that can likely be redressed by a favorable decision. 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff must "clearly . . . allege facts demonstrating each element." *Id.* at 1547. The essential "lesson[] of *Spokeo*" is that "[a] violation of a statute that causes no harm does not trigger a federal case." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016). For standing to exist, a plaintiff must have suffered "a *real* injury—that is, one that actually exists"—as opposed to an injury that is "conjectural or hypothetical." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th 2020) (emphasis in original; citations omitted). In other words, the plaintiff must have suffered a real-world harm. *Spokeo*, 136 S. Ct. at 1548. Further, "[a] plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III . . ." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). Thus, "a plaintiff's claim of injury in fact cannot be based solely on defendant's gain; it must be based on a plaintiff's loss." *Id.* at 174-75.

Here, Plaintiff attempts to establish standing by alleging that her data "has economic value" and that she "has not been compensated by Spokeo in any way for its use of her identity." Compl. at ¶¶ 28-29. But Plaintiff does not plausibly allege that her name, age, city of residence, and the other basic information referenced in Spokeo's free previews had any economic value *to her*. "[C]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (citing, *inter alia*, *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015)). And Plaintiff pleads no facts "to support the proposition that [her] personal information was made less valuable to [her] as a result of [Spokeo's actions], or that [those actions]

negatively impacted the value of [her] data," or that she planned to market her name and likeness in the first place. *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017); *In re Science Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014). Thus, Plaintiff "would have been no better off had [Spokeo] refrained from the [alleged] acts of which [she] is complaining"; her alleged harm is "based solely on [Spokeo's] gain" as opposed to her own alleged loss; and she has not suffered any injury-in-fact. *Silha*, 807 F.3d at 174-75.

Indeed, in a recent case involving a strikingly similar website, a California federal court dismissed plaintiffs' California state claims—including claims brought under an equivalent right of publicity statute—for lack of standing. There, plaintiffs alleged that the website Ancestry.com used their personal information to sell subscriptions to the website, where users can access "databases of personal and historical information" on individuals. *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *1-2 (N.D. Cal. Mar. 1, 2021). To establish injury, plaintiffs alleged, *inter alia*, that "Ancestry exploits and profits from their likenesses by obtaining paid subscribers," and that "they have lost potential earnings from the commercial use of their likenesses." *Id.* at *4. The court found that these allegations did not establish standing because, *inter alia*, "Ancestry's using the public profiles to solicit paying subscribers—standing alone—does not establish injury," and "plaintiffs do not have a commercial interest in their public profiles that precludes Ancestry's use of the profiles for commercial gain." *Id.* at *4-5. Here, Plaintiff's alleged injury is the same as that alleged in *Callahan*: that she "has not been compensated by Spokeo in any way for its use of her identity," which "has economic value." Compl. at ¶¶ 28-29. This Court, like the *Callahan* court, should find that these allegations do not establish standing.

Moreover, Plaintiff never alleges that anyone *ever actually searched* her name or *clicked on and viewed* the "free preview" of her report on the Spokeo website. Absent any allegation that Spokeo *actually* presented a "free preview" of her report to any consumers, Plaintiff's claim is precisely the sort of "conjectural or hypothetical" injury that is insufficient to create standing. *Nettles*, 983 F.3d at 899; *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 875, 878 (7th Cir. 2020) ("a bare statutory violation," combined with a "remote and speculative" allegation of harm, "does not suffice to show the concrete injury required for Article III standing"). Accordingly, the Court should dismiss the Complaint for lack of standing.

## IV. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF DOES NOT PROPERLY ALLEGE PERSONAL JURISDICTION OVER SPOKEO.

Plaintiff asserts in conclusory fashion that the Court has specific personal jurisdiction over Spokeo, but fails to plead the requisite facts supporting her conclusion. *Id.* ¶ 20. Specific personal jurisdiction only exists where "the alleged injury arises out of defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citation omitted). "It is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state, and those contacts must be *with the forum State itself, not . . . with persons who reside there*." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (emphasis added).

Critically, "the mere fact that [a defendant's] conduct affect[s] plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). For instance, in *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), plaintiff alleged personal jurisdiction in Indiana on the grounds that defendant shipped products to Indiana, knew plaintiff (a competitor company) was in Indiana, emailed Indiana customers misleading claims about plaintiff, had a website available to Indiana residents, and added Indiana customers to its email list. 751 F.3d at 801. The Seventh Circuit found

these contacts insufficient to establish specific personal jurisdiction, declining to "creat[e] . . . *de facto* universal jurisdiction [that] runs counter to the approach the [U.S. Supreme] Court has followed." *Id.* at 801-802 (citations omitted). The Seventh Circuit also found that the interactivity of defendant's website did not—on its own—justify the exercise of specific personal jurisdiction. *Id.* at 802-803. Indeed, "if having an interactive website were enough [to establish in-state contacts], there is no limiting principle—a plaintiff could sue anywhere." *Id.* at 803.

Illinois federal courts have followed suit, repeatedly declining to exercise personal jurisdiction on the basis of online activities not specifically targeted at the forum state. *See, e.g.*, *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170 at *3 (N.D. Ill. Aug. 29, 2017) ("there is no Internet-specific test for specific jurisdiction"); *Gullen v. Facebook.com, Inc.*, 2016 WL 245910 at *2-3 (N.D. Ill. Jan. 21, 2016) (no personal jurisdiction where defendant website did not target Illinois residents specifically); *Bittman v. Fox*, 2016 WL 2851566 (N.D. Ill. May 16, 2016) at *3-5, *8 (same).

Plaintiff's allegations of personal jurisdiction should fare no better. Plaintiff alleges that Spokeo "knowingly search[es] and obtain[s] private and public information records and/or identifying information *on Illinois residents*" "with the specific intent of selling that information to its customers," including by "directly sell[ing] its services to *consumers in Illinois*." Compl. ¶¶ 15-16 (emphasis added). But Plaintiff fails to allege that Spokeo creates contacts with *Illinois itself*—as opposed to persons who happen to reside there. Nor does Plaintiff allege that Spokeo's actions are *targeted* at Illinois, as opposed to incidentally reaching Illinois due to their inherently wide-ranging nature. Likewise, Plaintiff does not even allege that her injury occurred in Illinois; she simply avers that she has been harmed because unspecified "others . . . [could] identify her." *Id.* ¶ 24. But Plaintiff does not allege that a consumer *in Illinois* was able to identify her from a

7

Spokeo preview—indeed, she does not allege that *any* Spokeo consumer identified her through its search capabilities. *See supra* § V. The Court therefore should dismiss the Complaint for failure to sufficiently allege personal jurisdiction.

## V.    THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM.

### A.    Plaintiffs' Allegations Do Not Establish an IRPA Violation.

IRPA prohibits the unauthorized "use [of] an individual's identity for commercial purposes" without the individual's written consent. 765 ILCS 1075/30. Yet Plaintiff's allegations that Spokeo's "free previews" violate IRPA fail for three reasons: she does not allege that Spokeo actually presented a "free preview" of her profile to anyone; she cannot establish that Spokeo "identified" her within the meaning of the statute; and she cannot establish that her identity was used for a commercial purpose.

#### 1.    Plaintiff Does Not Allege that Spokeo Ever Presented a "Free Preview" of Her Background Report to a Consumer.

As a threshold matter, as explained (*see supra* § III), Plaintiff never alleges that anyone actually ever searched her name or viewed her "free preview" on the Spokeo website. Thus, Plaintiff has not alleged that Spokeo "us[ed] [her] identity for commercial purposes during [her] lifetime." 765 ILCS 1075/30(a) and 5 (defining "commercial purpose" as "the *public use* or *holding out* of an individual's identity . . .") (emphasis added). Plaintiff's IRPA claim fails for this reason alone.

#### 2.    Spokeo's Free Previews Do Not Identify Their Subjects Under IRPA.

Plaintiff alleges that "it is reasonable for others to identify her" from Spokeo's free preview because it "include[s] accurate details about her." Compl. ¶ 24. To support this claim, Plaintiff includes screenshots of Spokeo's website that show search results for her name and the "free preview" screen. *Id.* at 2-3. Plaintiff contends that the free preview is "identifying" because it

includes her "name . . . , age, current city and state of residence, [and names of her] relatives." *Id.* ¶ 5.

But Plaintiff ignores that another Illinois federal court dismissed with prejudice an IRPA claim based on ***these exact same Spokeo screens***. In *Vinci v. Spokeo, Inc.*, No. 17-cv-01519 (N.D. Ill., filed Feb. 17, 2017), Vinci, an Illinois resident, alleged that the free preview screens allowed ordinary, reasonable viewers to identify her, giving rise to an IRPA claim. *Compare* Vinci action, Dkt. 35 ("Vinci Am. Compl.")[1] at 7-8 *with* Compl. at 2-3. As Plaintiff pleads here, Vinci alleged that the previews were "identifying" under the statute because they included her "name, . . . age, location, and names of [her] immediate family members." Vinci Am. Compl. ¶ 26. In dismissing the case, the court held that even with the additional information beyond plaintiff's name, Spokeo's use of that information in its free preview ***does not identify her*** within the meaning of the statute: "plaintiff[] overlook[s] the fact that multiple people with the same name are listed on the [listing results page]. As a result, viewing [that] page makes it no more or less likely that the [free preview] ads identify plaintiffs, as opposed to another individual with the same name." *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ("*Dobrowolski II*")[2] at *3. The same is true here of Plaintiff Anna Boyd, where Plaintiff herself concedes that when a Spokeo user searches for "a particular individual" by name on the website, the website returns "a listing of

---

[1]      Spokeo respectfully requests that the Court take judicial notice of the Vinci Amended Complaint, attached as Exhibit A to the concurrently filed Declaration of John Nadolenco. Courts may take judicial notice of publicly-filed documents when deciding a Rule 12(b)(6) motion. *Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492-93 (7th Cir. 2011) (for motions to dismiss, courts may take judicial notice of court filings where accuracy of documents cannot reasonably be questioned).

[2]      The *Vinci* action, along with two other IRPA cases against similar defendants— *Dobrowolski v. Intelius, Inc.* (No. 17-cv-1406) and *Vinci v. BeenVerified, Inc.* (No. 17-cv-1447)— were assigned as related cases. The parties coordinated their motion to dismiss briefing, and the court issued a single order on defendants' motions with *Dobrowolski* as the primary case caption.

search results," where "[e]ach search result corresponds to an actual person . . . who matches the name provided by the public user." Compl. ¶¶ 3-4. The court's reasoning in *Vinci* applies here with equal force here—and is fatal to Plaintiff's IRPA claim. *See also Hooker v. Columbia Pictures Indus. Inc.*, 551 F. Supp. 1060, 1061-62 (N.D. Ill. 1982) ("[a]ppropriation . . . means more than the mere coincidental use of a name that happens to be the same as that of the plaintiff," instead, "the context or the circumstances [must] indicate that the name is that of the plaintiff.").

3. **Spokeo Does Not Use Its Free Previews for a Commercial Purpose Under IRPA.**

Nor does Plaintiff sufficiently allege a commercial use, as IRPA requires. As the court held in *Vinci*, ***Spokeo does not use its free previews for a commercial purpose under IRPA***:

> The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are ***part of the product*** offered for sale. And this is not a commercial purpose as defined by the statute.

*Dobrowolski II*, 2018 WL 11185289 at *3 (emphasis added) (citing *Thompson v. Getty Images, Inc.*, 2013 WL 3321612 at *2 (N.D. Ill. Jul. 1, 2013) (showing consumer a photograph of a person that consumer might buy not "commercial purpose" under IRPA); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006) (website's display of book cover depicting plaintiff not commercial purpose under Florida's commercial misappropriation statute). Plaintiff's allegation that Spokeo uses its free previews to advertise its fuller background reports and subscription services (Compl. ¶¶ 5-8) cannot give rise to an IRPA violation as a matter of law.

Further, even if Spokeo's free previews were identifying, the previews fall within an express exemption under IRPA for the use of an individual's identity for non-commercial purposes. IRPA "does not apply to . . . use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." 765

10

ILCS 1075/35(b) & (b)(2). And the information on Spokeo's "free preview" pages—just like the information in a yellow pages directory—does "not constitute commercial speech." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016) (quoting *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012)).

Plaintiff attempts to avoid the court's ruling in *Vinci* by alleging that Spokeo uses the free previews to advertise and entice consumers into buying a monthly subscription service, which provides background reports on individuals other than Plaintiff. *See* Compl. ¶¶ 7-11; *see also Lukis v. Whitepages Inc.*, 2020 WL 6287369 at *3-4 (N.D. Ill. Oct. 27, 2020) (recognizing IRPA claim based on free preview of plaintiff's profile shown on same screen as monthly subscription sign-up). But even if Spokeo derives *some* commercial benefit from the previews—such as using them to sell subscriptions to its site—that incidental benefit cannot convert a non-commercial use into a commercial one. *See United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001) (commercial speech is limited to speech that "does *no more than* propose a commercial transaction") (emphasis added); *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 2020 WL 1903956 at *6 (N.D. Ill. Apr. 16, 2020) (IRPA exemption applied even though use of counter-plaintiff's image was "clearly intended for the specific commercial purpose of obtaining donations to  financially support [counter-defendant's] operations," and noting multiple cases where "a broadcast fell within the exceptions and thus remained exempt, even if it also is used for commercial purposes").

Plaintiff's theory faces another hurdle. To support her contention, Plaintiff alleges—misleadingly—that "[c]licking on [the buttons] 'See Results,' 'Unlock Profile,' 'Continue,' or 'Sign Up' in the [screens shown in the complaint] leads users to a pay screen which presents them with an option to pay for Spokeo's monthly subscription services." Compl. ¶ 9. Plaintiff improperly conflates these buttons as if each were unique to a specific screen in the sequence of

11

Spokeo pages at issue. But an examination of the screenshots that Plaintiff includes in her Complaint shows that the "Sign Up" button that *she alleges* directs a user to the monthly subscription pay screen appears on ***every single Spokeo page***. *See id.* at 2-3. This means that there is nothing in particular about Plaintiff's free preview screen—over and above any other screen on the Spokeo website—that specifically entices a user to purchase the monthly subscription services. Without this nexus between Plaintiff's (allegedly) identifying information and the separate product, Spokeo's use of that purported identity cannot be for a commercial purpose. *Dobrowolski II*, 2018 WL 11185289 at *3. In fact, the last screen featured in the Complaint—where a user would actually sign up for Spokeo's monthly subscription services—does not feature Plaintiff's or *any* individual's information. Compl. at 3 ("Activate Your Account and Unlock Your Report!"); *cf. Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 825-26 (N.D. Ill. 2016) (no IRPA violation where defendant used identity for non-commercial purpose and ran ads for separate products alongside plaintiff's likeness on website); *Hart v. Amazon.com, Inc.*, 2015 WL 8489973 at *7 (N.D. Ill. Dec. 8, 2015) (same). Thus, Plaintiff's IRPA claim fails for this additional reason.

### B.  Spokeo Is Immune From Liability Under the Communications Decency Act.

Plaintiff's Complaint also fails because Spokeo is immune from liability under the Communications Decency Act (CDA), 47 U.S.C. § 230(c)(1). That statute provides that "[n]o [1] provider or user of an interactive computer service [2] shall be treated as the publisher or speaker of any information provided by [3] another information content provider." "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). Plaintiff's allegations make clear that all three elements are satisfied.

*First*, Spokeo is a provider of an interactive computer service, which the CDA defines as "any information service [or] system . . . that provides or enables computer access by multiple

users to a computer server." *Id.* § 230(f)(2). Plaintiff alleges that Spokeo's website enables multiple users to search and access the information contained in Spokeo's repository of "background reports," which are hosted on computer servers. Compl. ¶¶ 1-4; *see, e.g.*, *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 547 (E.D. Va. 2015) (internet search engine and online directory advertising providers); *Prickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646, 649 (E.D. Tex. 2006) (database of business and consumer information); *Callahan*, 2021 WL 783524, at *6 (website extracting information from publicly-available and private databases).

*Second*, Plaintiff seeks to hold Spokeo liable for publishing a "free preview [that] includes [her] name . . . , age, current city and state of residence, [her] relatives, and other identifying information," and for publishing on its website "a listing of search results" in supposed violation of IRPA. Compl. ¶¶ 4-5.

*Finally*, the allegedly unlawful information for which plaintiff seeks to hold Spokeo liable was provided by another content provider, not Spokeo. An information-content provider is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). As Plaintiff's allegations establish, that information comes from *other* sources: "Spokeo . . . search[es] over billions of name records," and "search[es] and obtain[s] private and public records and/or identifying information." *Id.* ¶¶ 12, 15. Thus, Spokeo's results listings page is akin to search engines that compile and "provide[] access to content that was created by a third party." *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (CDA barred claim against Google based on its listing of websites containing plaintiff's name in response to user searching for his name). With respect to Spokeo's free preview, Plaintiff alleges that the relevant name is provided by a user searching for her on Spokeo's webpage, and that Spokeo then

"provide[s] [the user] with a listing of search results," each one of which "corresponds to an actual person that Spokeo has located who matches the name provided by the public user." Compl. ¶¶ 3-4. It is thus the person who enters the relevant name in the Spokeo website who "provides the essential published content." *Carafano v. Metrosplash.com., Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

The recent *Callahan* decision confirms that websites just like Spokeo's are immune from liability under the CDA. In that case, plaintiffs argued that the website Ancestry.com "created content" because it "extracts yearbook data (names, photographs, and yearbook date), puts the content on its webpages . . . , adds information (such as an estimated birth year and age), and adds interactive buttons." 2021 WL 783524, at *6. The court rejected this argument, stating, "[i]nstead of creating content, Ancestry—by taking information and photos from the donated yearbooks and republishing them on its website in an altered format—engaged in a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230." *Id.* Finding Ancestry.com immune from liability under the CDA, the court dismissed plaintiffs' California right to publicity claim. Here, Plaintiff's alleges that Spokeo provides a nearly identical service: "Spokeo . . . search[es] over billions of name records," and "search[es] and obtain[s] private and public records and/or identifying information." Compl. ¶¶ 12, 15. Spokeo then compiles that information into a "free preview" that features certain information on the searched individual. *Id.* ¶¶ 3-5. Spokeo's website performs the same functions that the *Ancestry* court deemed editorial in nature. The Court should apply CDA immunity to Spokeo and dismiss Plaintiff's IRPA claim.

### C.   **The First Amendment Bars Plaintiff's Claim.**

Plaintiff fails to allege a viable IRPA claim for yet another reason: her proposed application of the statute to Spokeo's free previews would violate the First Amendment.

14

1.      **Spokeo's "Reports," Listings, and "Previews" Are Protected Speech.**

The First Amendment safeguards all speech that falls outside a "few limited areas" that warrant lesser protection. *United States v. Stevens*, 559 U.S. 460, 468 (2010). Noncommercial speech is fully protected, whereas commercial speech receives more limited protection. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983). Commercial speech is limited to speech that "does *no more than* propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001) (emphasis added). Speech is not "commercial" merely because it is "carried in a form that is sold for profit"; much indubitably protected speech—books, newspapers, films— is sold for profit. *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 638 (2013); *see also Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952).

Importantly, directories of names, addresses, phone numbers, and other similar information are noncommercial speech entitled to full First Amendment protection. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957, 962 (9th Cir. 2012) (yellow pages); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272 (E.D. Va. 1976) (physician directory); *cf. Sorrell v. IMS Health Inc*., 564 U.S. 552, 570 (2011) ("creation and dissemination of information" is "speech" within the meaning of First Amendment). Here, as the Complaint acknowledges, Spokeo's "reports" include information like names, ages, addresses, and court records (Compl. ¶¶ 5,7)—exactly the type of non-commercial information that is protected. *See, e.g.*, *Vrdolyak*, 206 F. Supp. 3d at 1385-86, 1389 (online publication of attorneys' names, addresses, phone numbers, and court records, with attorney reviews, protected by First Amendment and dismissing IRPA claim on that basis).

Spokeo's listing and "preview" pages enjoy the same protection as the "reports" because they merely display select excerpts of the information in the "reports." Compl. ¶ 5. That excerpted content does not lose its protection "simply because of the change in 'venue.'" *Nat'l Life Ins. Co.*

*v. Phillips Publ'g, Inc.*, 793 F. Supp. 627, 645 n.33 (D. Md. 1992); *cf. Almeida*, 456 F.3d at 1325-26 (Amazon's product detail page "replicates the bookstore experience" of browsing books). Rather, the speech on the listings page is "inextricably intertwined" with the speech in the "reports," and "the package as a whole gets the benefit of the higher standard of scrutiny applicable to noncommercial speech." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 521 (7th Cir. 2014); *see also Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988); *Jucha v. City of N. Chi.*, 63 F. Supp. 3d 820, 828-29 (N.D. Ill. 2014).

Further, the Complaint repeatedly characterizes Spokeo's listings and "preview" pages as "advertisements" for its reports. Compl. ¶¶ 8, 13, 14, 23, 24, 26, 28, 30, 32. And when speech "advertises an activity" that is itself "protected by the First Amendment," the ad may be treated as fully protected speech. *Bolger*, 463 US. at 67 n.14 (citing *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) (advertisement for religious book cannot be regulated as commercial speech)). Accordingly, courts facing right-of-publicity claims consistently treat advertisements of a protected publication as themselves fully protected.[3]

Spokeo's listings and "preview" pages for its "reports" also are entitled to full First Amendment protection because the content of the underlying "reports" is factual information available in the public domain. *See, e.g., Nieman,* 512 F. App'x at 636-38 (affirming dismissal of IRPA claim based on websites' aggregation of documents from plaintiff's prior lawsuits because "republication of documents contained in the public record . . . fall within and are barred by the

---

[3]    *See, e.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1050-51 (2d Cir. 1995) (book advertisement); *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 637-39 (9th Cir. 1982) (magazine cover); *Esch v. Univ. Pictures Co.*, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010) (movie trailer); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (television show ads); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 152 (D.D.C. 1995) (book advertisement); *see also Charles v. City of Los Angeles*, 697 F.3d 1146, 1153-55 (9th Cir. 2012) (courts "extend an advertised work's First Amendment protection to advertisements for [that] work" in tort actions). 21669788

First Amendment privilege"). "[T]he First Amendment creates a privilege to publish matters contained in public records." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-32 (7th Cir. 1993).

2.    **Plaintiff's Proposed Application Of IRPA Fails Strict Scrutiny.**

Because Spokeo's listings page and "previews" are entitled to full First Amendment protection, any attempt to restrict their content is "presumptively unconstitutional and may be justified only if . . . [it is] narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see also The Florida Star v. B.J.F.*, 491 U.S. 524, 535, 537 (1989); *Sorrell*, 564 U.S. at 571 (fact that law is content-based "all but dispositive"). Here, Plaintiff seeks to apply IRPA to prohibit otherwise fully protected speech that uses a particular kind of content—*i.e.*, a person's name and likeness. *See Sarver v. Chartier*, 813 F.3d 891, 903, 905-06 (9th Cir. 2016) (right-of-publicity statute "restricts speech based upon its content"). That application cannot pass strict scrutiny.

Generally, regardless of "[w]hether the publication involved was factual and biographical or fictional, the right of publicity has not been held to outweigh the value of free expression." *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 872 (1979). In limited circumstances, a state may restrict the display of a performer's entire act to protect "the right of the individual to reap the reward of his endeavors" and to "provide[] an economic incentive for him to make the investment required to produce [something] of interest to the public." *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 573, 576 (1977). But this interest in protecting "the economic value of [a] performance," which was "the product of petitioner's own talents and energy," *id.* at 575-76, is not implicated here. Spokeo's listings and "previews" have no conceivable effect on Plaintiff's incentive to engage in productive activity, and they do not interfere in any way with her ability to "reap the reward of [her] endeavors." *Id.* at 573. Similarly, the "previews" and listings do not derive value from "the product of [Plaintiff's] own talents and energy;" to the contrary, their value

17

comes from Spokeo's *own* endeavor of compiling publicly-available information. Thus, applying

IRPA to Spokeo's ads does not serve a compelling state interest.

For similar reasons, Plaintiff's proposed application of IRPA is not narrowly tailored to

serve the governmental interest in protecting the incentive for individuals to engage in value-

creating activities. It would impose a severe burden on Spokeo's operation of a lawful business:

the best, and indeed only, way for Spokeo to sell its "reports" is to tell a person running an internet

search or visiting its website what "reports" it sells. In contrast, there is no reason why IRPA

cannot exempt from its scope such incidental uses of an individual's name.[4] Plaintiffs' claims

therefore must be dismissed because they fail under the First Amendment.

**D.      Plaintiff's Proposed Application of IRPA Would Violate Illinois' Extraterritoriality Doctrine and the Federal Dormant Commerce Clause.**

Finally, Plaintiff's Complaint fails because she has not alleged an Illinois violation of the

statute, and both Illinois law and the U.S. Constitution prohibit applying IRPA extraterritorially.

**1.      Plaintiff Has Not Alleged A Sufficient Nexus To Illinois.**

Plaintiff's IRPA claim does not allege that Spokeo's conduct giving rise to the alleged

statutory violation occurred substantially and primarily in Illinois. Illinois has a "long-standing

rule of construction" that a "statute is without extraterritorial effect unless a clear intent in this

respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins.

Co.*, 216 Ill. 2d 100, 184-85 (2005). Nothing in the statutory text of IRPA conveys such an intent.

---

[4]      Even if Spokeo's listings page or advertisements could be considered commercial speech, plaintiff's claim would still be barred by the First Amendment. A content-based restriction of commercial speech must "directly advance[] a substantial governmental interest and . . . [be] drawn to achieve that interest" with a reasonably proportional fit between ends and means. *Sorrell*, 564 U.S. at 572. No substantial governmental interest is advanced by preventing Spokeo from merely mentioning plaintiff's name in (1) a list of excerpts from Spokeo's directory for the purpose of telling potential consumers what information the company offers; or (2) in an ad as an example of the type of information in Spokeo's profiles.

Thus, to survive dismissal, Plaintiff must plausibly allege that IRPA violation occurred *within* Illinois. A "transaction may be said to take place within [Illinois] if the circumstances relating to the transaction occur primarily and substantially within that state." *Avery*, 216 Ill. 2d at 186. "[T]he *majority of circumstances* relating to the alleged violation" must have occurred in the State. *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 65 (2008) (emphasis added).

Here, Plaintiff alleges that she is an Illinois resident, that Spokeo sells its services to Illinois customers, and that it acquires identifying information about Illinois residents. Compl. ¶¶ 15-17. Yet Illinois courts have long held that allegations of this nature are insufficient to create extraterritorial effect. A statute without express extraterritorial effect cannot be invoked where "[t]he occurrence constituting th[e] necessary element of liability did not take place in Illinois." *Graham v. General U.S. Grant Post No. 2665, V.F.W.*, 43 Ill. 2d 1, 2, 4 (1969) (Illinois Dram Shop Act action for damages from auto accident void for extraterritoriality where accident occurred in Wisconsin); *see also Landau*, 381 Ill. App. 3d at 65 (most important fact is the location of the "alleged violation"); *Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*, 2012 Il. App. (2d) 110958, ¶ 31 (App. Ct. 2012) (Illinois statute did not apply where "alleged deception and injury took place in Florida").

Plaintiff does not allege that any of the circumstances relating to the alleged "use" of her identity occurred in Illinois. *See* 765 ILCS 1075/30(a). Plaintiff's claim that Spokeo's listing and reports violated IRPA is predicated on three key events: (1) any internet user can access Spokeo's website and enter the first and last name of a particular individual; (2) the user receives search results with a free preview of the searched individual's information; and (3) Spokeo uses this free preview as an advertisement for its services. Compl. ¶¶ 3-4, 7-8. ***Plaintiff does not allege that any of these events happened in Illinois***. And the only facts pled about the location of Spokeo are that

19

it is a *Delaware* corporation with its principal place of business in *California*. *Id*. ¶ 18. Plaintiff

has failed to establish the necessary connection to Illinois.

2.       **The Dormant Commerce Clause Also Bars Plaintiff's IRPA Claim.**

The U.S. Constitution also limits states' power to regulate extraterritorial conduct. The

dormant Commerce Clause "precludes the application of a state statute" that has "the practical

effect of . . . control[ling] conduct beyond the boundaries of the State," "whether or not the

commerce has effects within the State"—thereby preventing "inconsistent legislation arising from

the projection of one state regulatory regime into the jurisdiction of another State." *Healy v. Beer*

*Inst. Inc.*, 491 U.S. 324, 336-37 (1989).

Here, Plaintiff seeks to apply IRPA to hold Spokeo liable for using her name in its listings

and "previews," without any geographical limitation. Compl. ¶ 40 (demanding Spokeo "cease

using Plaintiff's and other class members' names and any attributes of their identities to advertise

its products and services"). Under Plaintiff's theory, if a person in Florida types "Anna Boyd" into

the website; and Spokeo allegedly then applies its algorithm at its California headquarters to gather

all the individuals with the name Anna Boyd; and Spokeo's listings and/or free previews are then

displayed on the searcher's computer screen in Florida, Spokeo would have to comply with IRPA

by obtaining written consent from any resident of Illinois named Anna Boyd. Likewise, applying

IRPA to such conduct not only controls Spokeo's ability to display its website outside of Illinois,

it also hampers Spokeo's ability to sell those reports outside the state—because it cannot show

customers what it is selling.

Even if Illinois would impose liability for this conduct, many states would not; many states

do not even recognize a right of publicity, and those that do often construe the right narrowly. *See*

1 RIGHTS OF PUBLICITY AND PRIVACY § 6:3 (2d. ed. 2020). The Commerce Clause precludes

Illinois from overriding those states' policy choices and applying IRPA to conduct and speech that

occurs in those other states. *See Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 667-68 (7th Cir.

2010) (it is unconstitutional to "exalt the public policy of one state over that of another"); *Morrison*

*v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) ("Expanding Illinois law in a way that overrode

the domestic policy of other states would be problematic.").

This principle applies with special force in the context of regulation of the internet, which

"represents an instrument of interstate commerce" that necessarily traverses state lines. *Am.*

*Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 173 (S.D.N.Y. 1997). "Because the internet does not

recognize geographic boundaries, it is difficult, if not impossible, for a state to regulate internet

activities without project[ing] its legislation into other States" and running afoul of the dormant

Commerce Clause. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) (citations

omitted). The internet thus "requires a cohesive national scheme of regulation so that users are

reasonably able to determine their obligations." *See Pataki*, 969 F. Supp. at 182; *see also Am. Civil*

*Liberties Union v. Johnson*, 194 F.3d 1149, 1162 (10th Cir. 1999); *PSINet, Inc. v. Chapman*, 362

F.3d 227, 239–40 (4th Cir. 2004). Accordingly, Plaintiffs' skewed interpretation of IRPA

inappropriately burdens interstate commerce.

## CONCLUSION

For the reasons set forth above, this Court should dismiss the Complaint with prejudice.


Dated: March 8, 2021                    Respectfully submitted,

                                        **MAYER BROWN LLP**


                                        */s/ Michael Gill*
                                        Michael Gill
                                        71 South Wacker Drive
                                        Chicago, IL 60606
                                        (312) 701-7128

mgill@mayerbrown.com

John Nadolenco (*admitted pro hac vice; application for admission pending*)
Daniel Queen
350 S. Grand Ave.
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com
dqueen@mayerbrown.com

*Attorneys for Defendant Spokeo, Inc.*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this Memorandum in Support of Defendant Spokeo, Inc.'s Motion to Dismiss conforms to the type volume limitation requirements of Local Rule 7.1(B)(4). The total number of words in this Memorandum, including all headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities and signature block, is 6,996. The total number of characters, with the same inclusions and exclusions, is 44,649.

*/s/ Michael Gill*
Michael Gill

## **CERTIFICATE OF SERVICE**

I, Michael Gill, attorney for Defendant Spokeo, Inc., certify that this Memorandum in Support of Defendant Spokeo, Inc's Motion to Dismiss was served electronically via the Court's ECF filing system on all counsel of record on March 8, 2021.

*/s/ Michael Gill*
_____
Michael Gill